UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



FILED
SEP 1 3 2022
Clerk, U.S. District Court
Eastern District of Texas

4:22 cv 792 SDJ/KPJ

| | |
|---|---|
| FRANCOIS AUGUSTON,<br><br>    Plaintiff,<br><br>v.<br><br>SUNRUN INC., a Delaware Corporation<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. Plaintiff FRANCOIS AUGUSTON ("Plaintiff") is a natural person and is a citizen of the Eastern District of Texas and was present in the Eastern District of Texas during all calls at issue in this case.

2. Defendant SUNRUN INC. ("Sunrun" "Defendant") is a corporation organized and existing under the laws of Delaware with a principle address at 225 Bush Street, Suite 1400, San Francisco, California 94104 and can be served via registered agent Corporation Service Company D/B/A CSC-LAWYERS INCO at 211 E. 7th Street, Suite 620 Austin, Texas 78701.

**NATURE OF ACTION**

1

3. Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop placing illegal robo and unauthorized calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

4. Defendants offer solar panel systems. As part of marketing their services, Defendant Sunrun and their agents placed illegal robocalls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

5. Defendant Sunrun hires third party telemarketers to make unsolicited and unauthorized phone calls to thousands of consumers en mass using an ATDS.

6. Defendant Sunrun did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendant Sunrun is therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

7. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendant Sunrun's use of technological equipment to spam consumers on a grand scale without their consent.

9. By placing the calls at issue, Defendant Sunrun has violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

10. Plaintiff therefore seeks an injunction requiring Defendant Sunrun to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

11. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

12. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

13. This Court has personal jurisdiction over Defendant Sunrun because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

14. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant Sunrun regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

15. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these

calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

16. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

17. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

18. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

19. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

20. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

21. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

22. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

23. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

24. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

25. The FCC confirmed this principle in 2013, when it explained that "a seller …may be held

vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

26. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

27. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

28. Plaintiff's personal cell phone (214) 687-8516 has been registered on the National-Do-Not-Call-Registry since October 2007.

29. Defendant Sunrun offers solar panel systems to consumers.

30. Defendant Sunrun has been sued before for TCPA violations multiple times and continues to knowingly and willfully authorize telemarketers to place illegal robocalls (as

the calls alleged in this complaint) to thousands of consumers en mass by using an ATDS because violating the law benefits Defendant Sunrun financially.

31. Each and every telemarketer that called Plaintiff to his personal cell phone 8516 on behalf of Sunrun did not have Plaintiff's prior express written consent before calling.

32. Plaintiff received at least 26 unauthorized phone calls to his personal cell phone 8516 from Defendant Sunrun within a 30-day period.

33. The unauthorized phone calls made on behalf of Defendant Sunrun to Plaintiff's personal cell phone 8516 generally had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to a representative, indicating the calls were initiated using an ATDS.

34. Plaintiff received multiple calls from anonymous telemarketers who were soliciting solar panel systems on behalf of Defendant Sunrun.

35. Plaintiff agreed to the free consultation for the sole purposes of identifying the company responsible for the unauthorized phone calls.

36. Plaintiff was then contacted by a representative named David that stated he was with Defendant Sunrun and was calling Plaintiff regarding a proposal for solar panel systems which confirmed the company responsible for the phone calls Plaintiff received from telemarketers soliciting solar panel systems.

37. David solicited Plaintiff for solar panels on behalf of Defendant Sunrun.

38. David sent Plaintiff a text message from phone number (832) 815-6488 that contained Defendant Sunrun's information which again revealed the company responsible for the unauthorized phone calls.

39. Defendants purposefully availed themselves of the forum state by specifically targeting Texas residents by using Texas area codes to trick consumers into thinking the calls were local.

40. Defendants on nine occasions used a local area code (214) where Plaintiff resides to trick him into thinking the calls were local.

41. Table A displays the calls made by the Defendants

| Date | Time | Caller ID |
|---|---|---|
| 1/25/2022 | 4:35PM | 972-371-0124 |
| 1/25/2022 | 6:36PM | 972-371-0124 |
| 1/26/2022 | 8:23AM | 972-371-0124 |
| 1/26/2022 | 10:24AM | 972-371-0124 |
| 1/26/2022 | 12:25PM | 972-371-0124 |
| 2/3/2022 | 12:33PM | 214-302-8592 |
| 2/3/2022 | 3:34PM | 214-302-8592 |
| 2/3/2022 | 6:36PM | 214-302-8592 |
| 2/11/2022 | 8:47PM | 214-302-8592 |
| 2/11/2022 | 11:48AM | 214-302-8592 |
| 2/12/2022 | 3:01PM | 214-302-8592 |
| 2/14/2022 | 8:01AM | 972-371-0124 |
| 2/14/2022 | 9:41AM | 214-302-8592 |
| 2/14/2022 | 10:10AM | 972-371-0124 |
| 2/14/2022 | 12:10PM | 972-371-0124 |
| 2/14/2022 | 2:05PM | 214-302-8592 |
| 2/14/2022 | 2:19PM | 972-371-0124 |
| 2/14/2022 | 4:21PM | 972-371-0124 |
| 2/14/2022 | 5:13PM | 214-302-8592 |
| 2/14/2022 | 6:22PM | 972-371-0124 |
| 2/15/2022 | 8:34AM | 972-371-0124 |
| 2/15/2022 | 10:36AM | 972-371-0124 |
| 2/15/2022 | 12:37PM | 972-371-0124 |
| 2/15/2022 | 2:38PM | 972-371-0124 |
| 2/15/2022 | 4:39PM | 972-371-0124 |
| 2/15/2022 | 6:47PM | 972-371-0124 |

42.

43. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

44. The unauthorized phone calls made from or on behalf of Defendant Sunrun to Plaintiff's personal cell phone 8516 were made using an ATDS that has the capacity to store and produce telephone numbers using a random or sequential number generator.

45. With information and belief Plaintiff has received more calls from or on behalf of Defendant Sunrun within the past two years that are unknown to Plaintiff at this time and will be revealed during discovery.

46. Defendant Sunrun is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain Defendant Sunrun's registration.

47. Defendant Sunrun does not qualify for an exemption under § 302.053.

48. Defendant Sunrun never sent Mr. Auguston any do-not-call policy. Plaintiff sent an internal do-not-call policy request to customercare@sunrun.com.

49. On information and belief, Defendant Sunrun did not have a written do-not-call policy while it was sending Mr. Auguston the unsolicited calls.

50. On information and belief, Defendant Sunrun did not train its agents/telemarketers who engaged in telemarketing on the existence and use of any do-not-call list.

51. Defendant Sunrun facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct

of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

52. Defendant Sunrun have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendant Sunrun receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendant Sunrun receive is not currently available to Plaintiff but will be revealed through discovery to amplify what is shown below.

53. Defendant Sunrun refuses to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit them financially.

54. Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendant Sunrun prior to the calls alleged herein.

## VICARIOUS LIABILITY ON DEFENDANT SUNRUN

55. Defendant is vicariously liable under the theories of implied authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

56. "A[n] entity may be held vicariously liable for violations of the TCPA 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'" Aranda v. Caribbean Cruise Line, Inc., 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016) (Quoting In re Joint Petition filed by Dish Network, LLC, 28 F.C.C. R. 6574, 6582 ¶ 28 (2013)). "Formal Agency" in this context means actual authority, which may be express or implied. Id,.

57. Defendant gave express authority and apparent authority to telemarketers with full knowledge the administration of sales and solicitation of sales of solar panel systems

marketed as a result of the contract would be marketed using an automatic telephone dialing system ("ATDS").

58. By hiring a company to make calls on its behalf, Defendant "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

59. Moreover, Defendant maintained interim control over the actions of its telemarketers.

60. For example, Defendant had absolute control over whether, and under what circumstances, it would accept a customer from its telemarketers.

61. Furthermore, Defendant had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant Sunrun and the ability to require them to respect the National Do Not Call Registry.

62. Defendant also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

63. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c. "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

64. A principal may make a manifestation "by directing an agent to make statements to third

parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

65. Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

66. Defendant Sunrun is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for solar panel systems on behalf of Defendant Sunrun.

## The Texas Business and Commerce Code 305.053

67. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

68. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## Violations of the Texas Business and Commerce Code § 302.101

69. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

70. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

71. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

72. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

73. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### The Plaintiff's cell phone is a residential number

74. The calls were to the Plaintiff's cellular phone 8516 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phone to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, watching movies, listening to music and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name and pays the cell phone from his personal

accounts.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

75. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

76. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

77. Plaintiff has been annoyed, harassed, and irritated by robocalls placed by Defendant Sunrun telemarketers and agents.

78. Defendant Sunrun's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## **FIRST CAUSE OF ACTION**

**Willful and/or Knowing Violation of 47 U.S.C. § 227**
**Telephone Consumer Protection Act of 1991**
**(Against all Defendants)**

79. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

80. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

81. Plaintiff never consented to receive calls from Defendant Sunrun. Plaintiff has no relationship with Defendant Sunrun.

82. Defendant Sunrun's calls were made for purposes of advertising and marketing Defendant Sunrun's solar panel systems. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

83. The calls were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

84. As a result of their unlawful conduct, Defendant Sunrun's agents repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant to stop their unlawful calling campaigns.

85. Not only did Defendant make these violating calls, Defendant and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

86. If the Court finds that Defendant Sunrun willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
(Against All Defendants)

87. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

88. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

   b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

  c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

89. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

90. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## THIRD CUASE OF ACTION

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))**

**(Against All Defendants)**

91. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

92. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

93. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

94. Plaintiff was statutorily damaged at least (26) times under 47 U.S.C. § 227(c)(3)(F)

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

by the Defendant by the telephone calls described above, in the amount of $500 per call.

95. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

96. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## FOURTH CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

97. Plaintiff incorporates the foregoing allegations as if set forth herein.

98. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Auguston cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. Defendant Sunrun violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

99. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

100.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

## FIFTH CAUSE OF ACTION

### (Violations of The Texas Business and Commerce Code 302.101)

101. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

102. The foregoing acts and omissions of Defendant Sunrun and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

103. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

104. Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees. **Texas Business and Commerce Code 302.302(d).**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Francois Auguston prays for judgment against the Defendant jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 26 calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G. An award to Mr. Auguston of damages, as allowed by law under the TCPA;

H. An award to Mr. Auguston of interest, costs and attorneys' fees, as allowed by law and equity

I. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

September 2, 2022,   Respectfully Submitted,

Francois Auguston
Plaintiff, Pro Se
4704 Redwood Drive
Mckinney, Texas 75070
214-687-8516
Fa.mint2000@gmail.com